IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KEVIN GARDNER, et al.                                        PLAINTIFFS

v.                              1:05CV00088-WRW

U.S. ARMY CORPS OF ENGINEERS; COLONEL
WALLY WALTERS, DISTRICT ENGINEER,
LITTLE ROCK DISTRICT, U.S. ARMY CORPS
OF ENGINEERS; THOMAS S.  PARK, OPERATIONS
MANAGER, GREERS FERRY PROJECT OFFICE; and
JOSEPH T.  BENTON, III.                                      DEFENDANTS

## ORDER

Pending is separate Defendants U.S. Army Corps of Engineers, Colonel Wally

Walters, and Thomas S. Park's ("Corps") Motion to Dismiss.[1]  Plaintiffs ("Gardners")

responded,[2] the Corps filed a Reply,[3] and the Gardners filed a Surreply. The Corps asserts

that this action is brought under the Administrative Procedure Act ("APA"), and that

Plaintiffs have failed to exhaust their administrative remedies.  Alternatively, the Corps

argues that there is no final agency action.

## I.  Background

The Gardners filed a complaint for injunctive and declaratory relief asking that the

Corps be required to issue them a permit for a private boat dock.  The Gardners purchased

---

[1]Doc. No. 6.

[2]Doc. No. 9.

[3]Doc. No. 10.

land and applied for the permit on a flowage easement of Greers Ferry Lake.  The lake shore is managed by the Corps.  The previous owners of this property had already applied for and were given permission to build a dock, but their permit application was placed in suspension, pending the outcome of litigation challenging the validity of the Corps' Shoreline Management Plan.  Before selling their home to the Gardners, the previous owners granted an access easement to an association of land owners in the area.  These land owners are represented by Defendant Joseph Benton III ("Benton"), and also claim they are entitled to a dock permit in the same location -- in the Gardners' back yard.

Shortly after buying the property, the Gardners contacted Mr. Thomas Park ("Park"), Operations Manager of the Greers Ferry Project Office, to secure their dock permit.[4]  Mr. Park has the authority to issue Shoreline Use Permits, such as dock permits.  The Gardners also met with Mr. Bennie Rorie ("Rorie"), Natural Resource Specialist with the Corps, to confirm the site conditions for the dock.

During this application process, Rorie and Park discovered that a third-party -- Benton -- had a competing claim to the water flow easement.[5]  Based on this, the Corps refused to issue a permit to the Gardners until the easement's ownership was either voluntarily settled or settled by a court order.

---

[4]Doc. No. 1, Plaintiffs' Exs. 1-3.

[5]Doc. No. 3.  (Benton's Answer to the complaint alleges that he is one of several interested parties that participated in a community boat dock application that was submitted by the previous owners of the Gardners' property).

In its Answer and Motion to Dismiss, the Corps alleges that: (1) the Gardners have been in a long-running land dispute over the boat dock; (2) this dispute involves a conflict over access to the water easement, and a conflict over which party filed first for a permit; (3) an administrative appeal process is available under the Greers Ferry Shoreline Management Plan; (4) the Gardners filed this lawsuit without following this process and appealing  to the Division Engineer; (5) under the Shoreline Management Plan, the Corps has the most experience with managing limited shoreline resources; (6) the Gardners did not exhaust their administrative remedy and are seeking to settle a local land dispute by involving the Corps and the federal courts.  In its Reply to the Gardners' Response to the Motion to Dismiss, the Corps also asserted there is no final agency action.

The Gardners counter that the administrative appeal process is futile because the Corps has not denied their permit application, but has refused to consider it -- and this is not the kind of decision that can be administratively appealed.

The Gardners have also sued Benton and have asked that he be compelled to assert any claims he may have in this action.  Jurisdiction is asserted under the Declaratory Judgment Act.[6]

## II.  Authority

### A.  Exhaustion

It is well established that a plaintiff generally must exhaust his administrative remedies before proceeding in federal court.[7]  Exhaustion is generally required because it

---

[6]28 U.S.C. §§ 2201-02.

[7]*Bowen v. City of New York*, 476 U.S. 467, 484 (1985).

3

(1) prevents premature interference with agency processes; (2) allows the agency to function efficiently and have an opportunity to correct its own errors; (3) affords the parties and the courts the opportunity to benefit from the agency's experience and expertise; (4) allows the agency to compile a record which is adequate for judicial review; and (5) it promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record.[8]

Exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule.[9]  "A party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual."[10]

A party that is challenging the agency action has the burden of proving that exhaustion should be excused.[11]  The Gardners have the burden to show that they should be excused because the administrative procedures would be futile.

---

[8]*Id*; *see also Marine Mammal Conservancy, Inc. v. U.S. Dep't of Agric.*, 134 F.3d 409, 414 (D.C. Cir. 1998); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986).

[9]*Id.*

[10]*Ace Property and Casualty Insurance Company v. Federal Crop Insurance Corporation*, 440 F.3d 992, 1000-01 (8th Cir. 2006) (citing *Missouri v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987)).

[11]*In Home Health, Inc. v. Shalala*, 272 F.3d 554, 559-61 (8th Cir. 2001).

An administrative remedy will be deemed futile if there is *no doubt* that the agency cannot provide relief.[12]  The question, then, is whether the Division Engineer has the power to grant relief to the Gardners by issuing a dock permit.

In some cases, exhaustion is excused when it "would be futile because of the certainty of an adverse decision."[13]  This exception is limited to instances in which "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further."[14]

**B.  Finality**

The APA provides for review of agency action but only if the action is final.[15]  An administrative action is final if it marks the consummation of the agency's decision-making process and if it "determines rights or obligations from which legal consequences will flow."[16]  "The finality doctrine is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."[17]

---

[12]*McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (emphasis added).

[13]3 Kenneth Davis, Administrative Law Treatise § 20.07 (1st ed.1958).

[14]*McCarthy*, 503 U.S. at 146.

[15]5 U.S.C. §§ 702 and 704.

[16]*Bennett v. Spear*, 520 U.S. 154, 178-79 (1997).

[17]*Industrial Customers N.W. Util. v. Bonneville Power*, 408 F.3d 638, 645 (9th Cir. 2005).

### C.  Judicial Review

The APA's provisions for judicial review of "agency actions" are contained in 5 U.S.C. §§ 701-706.  Those provisions state that any person "adversely affected or aggrieved" by agency action,[18] including a failure to act, is entitled to judicial review as long as the action is a "final agency action for which there is no other adequate remedy."[19]

But, before gaining access to federal courts, a party must first clear the hurdle of 5 U.S.C § 701(a).  This subsection gives courts the power of review, *except* under the following circumstances:  (1) the statute, on which the action is based, precludes judicial review; or (2) the action is committed to an agency's discretion by law.[20]

The second exception is a very narrow one, and is only applicable in those rare instances where, there is no law to apply.[21]  Under 5 U.S.C. § 701(a)(2),  if no judicial standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for abuse of discretion.[22]  In considering whether administrative action is capable of judicial review under the APA, the test is not whether a statute, lacks applicable law, but, whether, in a given case, there is no law to be applied.[23]  Thus, the existence of some law that is generally applicable to the subject matter

---

[18]5 U.S.C. § 702.

[19]5 U.S.C. § 704.

[20]5 U.S.C. § 701(a)(1) and (2) (emphasis added).

[21]*Heckler v. Chaney*, 470 U.S. 821 (1985).

[22]*Id.* at 830; *see also Lincoln v. Vigil,* 508 U.S. 182 (1993); *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987).

[23]*Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975).

will not necessarily remove agency discretion. There is law to apply, only if a specific statute

or regulation limits the agency's discretion to act in the specific manner which is

challenged.[24]

When an agency refuses to act, it does not exercise coercive power over an

individual's liberty or property rights, and, thus, does not infringe upon areas that courts

often are called upon to protect.  In contrast, when an agency affirmatively acts as an

enforcer, the action can be reviewed to determine whether the agency exceeded its

enforcement power.[25]  Typically a decision not to act is considered discretionary and outside

judicial review.  But, courts have drawn a distinction between an agency's decision not to act

with respect to an entire class, as opposed to decisions that affect only one individual.[26]

When a statute or act contains no standard governing a denial of a waiver request, and

when the waiver affects only one party, then the denial is not subject to judicial review.[27]

Similarly, agency decisions to deny the allocation of electric power to a single city, or to

refuse to grant an exemption to one state, are not subject to judicial review.[28]  An agency's

---

[24]*Arizona Power Authority v. Morton*, 549 F.2d 1231 (9th Cir. 1977).

[25]*Id.* at 832, (citing *FTC v. Klesner*, 280 U.S. 19 (1929)).

[26]*State of Iowa ex. Rel. Miller v. Block*, 771 F.2d 347 (8th Cir. 1985); *see also Alliance for Bio-Integrity v. Shalala*, 116 F.Supp. 2d 166 (D. D.C. 2000).

[27]*Connecticut v. Spellings*, 453 F.Supp. 2d  459 (D. Conn. 2006).

[28]*City of Santa Clara, Cal. v. Andrus*, 573 F.2d 660 (9th Cir. 1978); *Michigan Dept. of State v.  U.S.*, 166 F. Supp. 2d 1228 (W.D. Mich. 2001).

decision not to renew an examiner's authority is also unreviewable.[29] Finally, a prosecutor's decision not to prosecute cannot be reviewed.[30]

In determining whether a matter has been committed solely to agency discretion, consideration is given to the nature of the administrative action at issue and the language and structure of the legal standards.  In other words, when the action's nature is not affirmative action, and when it applies only to a single party -- generally, it is within the agency's discretion and is not reviewable.  Moreover, the language of the underlying regulation or statute is important.  When a statute or regulation uses the word "may," it lacks a clear legal guideline.[31]

**D.  Jurisdiction under The Declaratory Judgment Act**

The Declaratory Judgment Act states "[i]n a case of *actual* controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[32]   The Act is available in federal courts only in cases involving an actual case or controversy, and it may not be used for securing an advisory opinion for controversy that has not arisen.[33]

---

[29]*Steenholdt v. FAA*, 314 F.3d 633, 634 (D.C. Cir. 2003).

[30]*Wyte v. United States*, 470 U.S. 598 (1985).

[31]*Spellings*, 453 F. Supp. 2d at 4.

[32]28 U.S.C. § 2201; *see also,* Fed. R. Civ. P. 57; *Calderron v. Ashmus*, 523 U.S. 740 (1998).

[33]*Coffman v. Breeze Corp.*, 323 U.S. 316 (1945) (citations omitted).

The Declaratory Judgment Act[34] provides a particular form of relief.  It does not confer non-existent jurisdiction,[35] but only allows additional remedies.[36]  The Act enlarged the remedies available in the federal courts but did not extend their jurisdiction.[37]   Only when the plaintiff has an independent source of subject matter jurisdiction, such as diversity jurisdiction, is it permissible to proceed under the Declaratory Judgment Act.[38]

### E.  Supplemental Jurisdiction

In some cases a federal court may exercise supplemental jurisdiction over state claims that are related to the federal claim.  But, if the claim is based on state law, a court may "decline to exercise supplemental jurisdiction . . .  [if] the district court has dismissed all claims over which it has original jurisdiction."  Congress unambiguously gave district courts discretion to dismiss supplemental state law claims when all federal claims have been dismissed.[39]

---

[34]28 U.S.C. § 2201.

[35]*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950); *A.G. Edwards & Sons, Inc. v.  Public Bldg. Commission*, 921 F.2d 118 (7th Cir. 1990).

[36]*Collin County v. Homeowners Assn. for Values Essential to Neighborhoods*, 915 F.2d 167 (5th Cir. 1990).

[37]*Skelly Oil Co.*, 339 U.S. at 672.

[38]*Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418 (1977).

[39]28 U.S.C. § 1367(c)(3); *see Labickas v. Arkansas State University*, 78 F.3d 333, 334 (8th Cir. 1996); *McLaurin v. Prater*, CO-1, 30 F.3d 982, 985 (8th Cir. 1994).

### III.  Discussion

The Gardners have asked for a permit to build a private dock, and the Corps has refused to consider their request because of a conflicting easement.  The Corps' position is that the Gardners must settle the property dispute before it will issue either party the desired permit.  The Gardners argue that because they have met all the Corps' permit requirements, the Corps should be compelled to issue the permit.

The initial decision to table both permit applications, until the property dispute is settled, was made by Rorie and Park.  This is only the first step in the process.  An administrative remedy will be deemed futile only when there is no doubt that the agency is incapable of granting relief.[40]   The Gardners have the burden of showing that an appeal would be futile because the Division Engineer is hamstrung.

Plaintiffs have failed to raise doubt about the Division Engineer's ability, and his power to override the Rorie/ Parks' decision.  According to the Corps, it is not its policy to issue permits when there are competing claims.  However, there is no authority that the Division Engineer is bound by such policy.  Finally, the Gardners have not shown that their interest in obtaining an immediate dock permit outweighs the Corps' interests in maintaining their administrative autonomy.[41]  Since the Gardners have not used the appeal process, there is no final agency action.

However, even if the Gardners had demonstrated that they exhausted the administrative process, they have failed to clear the hurdle set out in 5 U.S.C. § 701(a)(2).

---

[40]*McCarthy*, 503 U.S. at 147.

[41]*Id.*

The Corps' decision to deny a dock permit is an action that is committed to an agency's discretion by law.

A refusal to issue a permit is not an affirmative action, it is a decision not to act. Typically, this is the kind of decision that has been deemed "absolutely discretionary."[42]  In addition, the Corps' action affects one party, not an entire class, and it does not have wide-ranging consequences.

Additionally, there are no legal standards to apply in this case.  The Gardners assert that the regulations compel the Corps to issue permits, once the requirements are met.  I disagree.

The applicable regulations are found at 36 C.F.R. § 327.30, known as the Shoreline Management on Civil Works Projects.  This regulation was enacted under the Authority of the 1944 Flood Control Act.[43]   The purpose of the regulation is to make sure that, in managing the shoreline,  the Corps protects the public and the environment:

> It is the policy of the Chief of Engineers to protect and manage shorelines of all Civil Works water resource development projects under Corps' jurisdiction in a manner which will promote the safe and healthful use of these shorelines by the public while maintaining environmental safeguards to ensure a quality resource for use by the public. The objectives of all management actions will be to achieve a balance between permitted private uses and resource protection for general public use.[44]

The Corps is not required to give every private citizen a dock permit, but, it is charged with managing the shore to prevent floods, safety hazards, and environmental

---

[42]*Heckler*, 470 U.S. at 832.

[43]16 U.S.C. § 460d.

[44]36 C.F.R. § 327.30.

damage.  In this case, denying the Gardners a dock permit will have no affect on flood control, public safety, or the environment.

When it comes to authorizing the use of the shoreline by private parties, the Corps is given discretion, and this is shown by the consistent use of the word "may," in the applicable regulation.  For instance, the following statements are contained in the shoreline regulation: "Private shoreline uses *may* be authorized in designated areas consistent with approved use allocations specified in Shoreline Management Plans;"[45] and "Limited Development Areas are those areas in which private facilities and/or activities *may* be allowed."[46]

Because this particular situation does not include issues of  public access, public safety, flood control, or environmental management, there are no guidelines to apply.  The Corps, as owner and manager of the shoreline, has absolute discretion to permit private use. Again, this matter is not subject to judicial review.

The Gardners also sued Benton, claiming original jurisdiction under the APA and asking for relief under the Declaratory Act.  Even though there is diversity between the Gardners and Benton, the Complaint does not claim diversity as an independent ground for jurisdiction and does not ask for a ruling on the easement dispute.  Instead, the Complaint asks that Benton be compelled to assert his claim for the dock permit.  Because the Corps is dismissed from this case, no controversy remains as to the dock permit.

The easement dispute between the Gardners and Benton is a matter of state law.  The Gardners filed this action under the APA, which was the basis for original jurisdiction.

---

[45]33 C.F.R. § 327.30 (d)(2) (emphasis added).

[46]33 C.F.R. § 327.30 (e)(5)(i)(emphasis added).

Because the Corps is not liable under the APA, and the only remaining issue is one that arises under state law,  I decline to exercise supplemental jurisdiction over this a claim.  The Corps' Motion to Dismiss is GRANTED, and the claim against Benton for declaratory relief is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

IT IS SO ORDERED this 3rd day of January, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE